Anderson, J.
delivered the opinion of the court.
The question is, in this case, whether James Marshall, the appellant, or J. L. Cro'ss, the appellee, is entitled to a certain fund in the hands of George W. "Ward, the trustee of Dr. H. H. McGuire. The fund consists of the balance of the proceeds of the sale of a tract of land, which was made by the trustee, Ward, under a deed of trust to him by Dr. McGuire, after satisfying the balance of purchase money due upon it to the widow and heirs of David Funsten, deceased.
The land was’first offered for sale in September 1869. The trustee says he went to the place of sale, and found Mr. James Cross there, and also his son in possession. It was put up, but not sold for- want of bidders. It was sold in October following, and was bought by Dr. William McGuire for James Marshall for the price of $4,288. It does not appear that the sale was objected to, or any claim of right made to the property by the appellee, James L. Cross, or his father, either in October 1869, when it was sold, or in September when it was put up, but not sold for want of bidders, though both the father and the son were present when it was first offered. If the appellee had any claim at that time to the property, the presumption is he would have asserted it, or would have forbidden the sale. There is no proof that he did either. If he had done so, it was easy for him to have proved it. He took the deposition of his father; but not a syllable of such notice or demand does he prove by him. FTor *688 does he even allege it in his answer to the original bill or in his cross-bill. He made no attempt to prove it by Ward though he was represented by counsel when his ^oposition was given. Ho inquiry was made of him if such were the fact. It must be presumed that such was not the fact, or the inquiry would have been made. And it is not easy to reconcile the conduct of the appellee, except with the abandonment of his contract and all claim upon the land. And this is not improbable.
His contract was a bad one for Kim. He was to pay for the land $5,500, with interest on deferred payments from 1st of March 1868—a great deal more than it had sold for before to Pidgeon, or afterwards to Marshall. And it was an injudicious contract for him, because he was evidently unable to fulfil it. He was in default in meeting the very first deferred instalment of purchase money, of $1,000, due March 1st, 1868; of which he paid only $425; and that not until the 15th of July 1868. Interest was accumulating on that instalment; another was due in seven or eight months, with accruing interest from the 1st of March 1868; and another the year following; and so on. And he might very soon be called on to pay the whole amount due the widow and heirs of David Funsten, deceased, which amounted, with interest to April 6th, 1870, to $2,321.47; and his only resource for making payments was what he could save from his salary as a teacher: as he tells us himself, he was very poor. He had evidently assumed obligations which he was unable to discharge. He was involved in an onerous contract, which he could not fulfil, and from which it would he to his advantage to be released. If .it had been in the power of McGuire to have fulfilled it, and to have made him a good title, it is evident he could not have *689 fulfilled it on his part. He had already failed to make, as we have seen, the very first deferred payment. He had evidently undertaken more than he could accomplish, and if held to his contract, it would in all probability have involved him in inextricable ruin. He had agreed to give for the land twelve hundred and sixty-two dollars more, with interest on the deferred payments, than could afterwards be got for it in open market on terms of one-third in cash, and the residue in two equal annual instalments, without interest, when it was purchased by Marshall. If he had been held to his contract it is more than probable that he could not have met his payments, and the land would have been forced to sale, and it is not reasonable to suppose would have brought more than it sold for to Marshall, in which event his loss would have been $1,262, with an accumulation of interest. It was most probably to his advantage, that McGuire was not in condition to insist upon the execution of the contract on his part. And if he had been, it would have been better for Cross, if necessary in order to be released from the contract, to have surrendered the $778.86 which he claims to be the amount due from McGuire on account of the purchase money he had paid, than to have gone on with the contract. It is not surprising, therefore, that he did not insist upon his contract, and object to the sale when it was made under the deed of trust.
But why did he not demand that he should be refunded what he had paid for the land out of the proceeds of the sale after the Funsten debt was satisfied ? There is no proof, as we have seen, that he asserted any such claim at the time of sale. The presumption is he did not. That was the time for him to have asserted it if he ever intended to make such claim. The deed of trust was executed on the 5th of May 1868, *690 and admitted to record in Clarke county on the 22nd of June following. By its terms it requires the trustee after satisfying the Funsten debt and expenses of sale, &c to pay the remainder to McGuire. Cross must be 7 r j presumed to have notice of that deed, it being of re-cor(^ ^nd jaQ(j was pU£ Up to sale under it, in his presence in September 1869, more than a 'year after its recordation. If he intended to assert a lien on the land or the proceeds of the sale, for what was due him from McGuire, he surely would then have notified the trustee of his claim.
And if, against his own interest, under the circumstances which I have detailed, he intended to insist upon his contract, or to hold the land bound for the purchase money he. had paid, why did he not have his contract with McGuire recorded? He must be presumed to have known the law, that any contract made in respect to real estate, &c., shall be as valid, as against creditors and purchasers, from the time it is recorded, as if it were a deed conveying the estate or interest in the contract—Code of 1873, p. 897, § 4; and that by § 5, “ Every such contract,” &c., “ shall be void as to creditors and subsequent purchasers for valuable consideration without notice, until and except from the time that it is duly admitted to record,” &c. Mr. Cross must be presumed to have known the law, and all other persons are justified in dealing with the subject under such presumption. If upon searching the records, they find no evidence of such equity, they have a right to presume that there is none, if otherwise without notice of its existence. If Mr. Cross intended to insist upon his contract, or to hold the land bound for the money he had paid on it why did not he have the contract recorded ? It would have been in ample time if it had been recorded when the land was offered *691 for sale in September or October, 1869, or any time before the purchase was confirmed by Marshall in the spring of 1870. That would have been notice to all the world. It would have been notice to the purchaser, and the land, or .the proceeds of the sale, in the purchaser’s hands, would have been bound for his claim.
That he did not forbid the sale, or notify the trustee of his claim upon the land, or notify James Marshall, the purchaser, that he held this claim on the land, or have his written contract for the purchase recorded, can only be accounted for, it seems to me, upon the ground, that he had determined at that time, to abandon his contract, and all claim upon the land, and look to McGuire personally (in whom it appears from his cross-bill, he not only reposed confidence, but of whom he had a very exalted opinion), to refund the purchase money he had paid. Gould he thus remain silent, and allow Marshall to purchase, and pay for the land, and then hold him liable for the claim which he had upon Dr. McGuire ? A person who, having an interest or claim upon property, stands by and sees another sell it as his own, without objection, will not be allowed afterwards to assert his title. His silence, when in good conscience he ought to speak, shall close his mouth when he would speak (2 Sugd. Vend. with American notes, chap. 23, § 1, p. 507; 8 Amer. ed. note u, citing numerous cases).
In his answer to the original bill, which was sworn to on the 30th of July, 1870, but not filed until the October term of that year, whilst he recognizes his loss of the farm, he prays that the trustee Ward may be ordered to refund to him the purchase money he had paid on the land with interest, after discharging the Hunsten debt; or that James Marshall who was the *692 purchaser should pay it. But this was after Marshall had paid the whole purchase money; or at least after McGuire, who, as we have seen, was entitled to the res^ue °f the proceeds of sale after satisfying the Eunsten debt, &c., had assigned it for the benefit of Marshall and another, by deed of assignment, bearing date April 28, 1870, of which the trustee had been duly notified. This assignment was perfected three months prior to the date of Cross’ answer, and nearly six months before it wTas filed—and that is the first intimation we have of the claim of Cross to hold the proceeds of the sale liable.
It appears that between the preparation of his answer, and the filing of it in court, he and McGuire had a settlement of this claim, and as auxiliary to it had an arbitration of some matters about which they were not agreed, and that a certificate -was given by McGuire under his hand and seal, that he was doe him a balance of $778.36, for money advanced on said contract of purchase. This certificate is dated September 9th 1870. But, as we have seen, long before this adjustment and certificate McGuire had assigned for value his whole interest under the deed of trust in the proceeds of the sale made by Ward.
But it is contended that said assignment was made subject to the claim‘of Cross upon the proceeds of said sale. The assignment is of “any balance due me under deed of trust,” and the trustee Ward is directed to pay to Edward M. Tidball, trustee, any balance due to me after the payment of my liabilities under the trust in which he is trustee.”
The deed in which Mr. Ward is trustee, conveys the land in question upon trust, to secure the payment of $1,265.45, with legal interest thereon, from the 30th of August 1856 until paid, to O. It. Eunsten and the other *693 heirs at law of Elizabeth Eunsten deceased; being the balance of purchase money for the said tract of land, due from, and unpaid by, the said Hugh H. McGuire, to the said O. R. Eunsten and the other heirs at law as aforesaid, for the use of said David Eunsten’s widow and children. And the trustee, in default of payment, six months after default of payment is made, is upon request, &c., required to make sale, and out of the proceeds “to pay all the necessary expenses, and the said debt and interest, and the remainder to pay over to the said Hugh McGuire.” There is no mention of, nor allusion to any. claim of James L. Cross. What was due under that deed of trust to Hugh McGuire, if it was not the balance of the proceeds of sale after satisfying the Eunsten debt and expense of sale, ■&c. ? Whatever that balance was, whatever McGuire was entitled to demand of the trustee Ward, under the terms of that deed, was transferred and vested by his said deed of assignment, in Tidball trustee, to secure the debts due from the assignee to Marshall, and to ■certain debts for which said Marshall and William D. McGuire are his endorsers and security. It is very clear that the assignment is hot made subject to any claim of Cross against McGuire, and that Ward the trustee, is not authorized by it to pay any part of the fund to James L. Cross.
Hor does the certificate afterwards given by McGuire to Cross purport to be a transfer of any part of the proceeds of said sale to him. He could not have made such a transfer to Cross, as he had about five months before assigned the whole of it for value to other parties. It can only be regarded as his acknowledgment under seal of the amount he owed Cross, and is in effect a personal obligation to pay it. It cannot be regarded as a specific charge upon this fund. *694 If it could be so treated, it could not avail Mr. Cross,, as McGuire had previously parted with his entire interest in the fund, and had nothing in it which he could transfer to Cross, unless Marshall had notice,, at the time he confirmed the purchase made for him of the land, or prior to the assignment by McGuire toTidball for his benefit—unless, indeed, said assignment was fraudulent and void as to the appellee Cross.
It is not charged by Cross in his answer to the-original bill, nor in his cross-bill, that Marshall had notice of his equity at the time he became the purchaser, or when he subsequently took the assignment. The plaintiff in his cross-bill seems to rest his case upon the averment that it never was the intention of McGuire to assign to Marshall anything more than the surplus of the fund arising from the land sold by the trustee Ward, over and above what was required to satisfy the Funsten debt, and also his just claim; and he relies upon the face of the assignment itself,, considered in connection with the facts and transactions disclosed in the cause. I have already considered these matters, and have reached the conclusion that no such effect can be given to the deed of assignment, nor to the certificate of September 9th 1870; nor can we find anything in the surrounding circumstances to alter the plain language and meaning of those deeds.
But although the fact of notice to the subsequent purchaser of a preexisting equity is not alleged in the-bill nor put in issue by the pleadings, yet, if it appear that he had notice, it would be incumbent on the court to enforce the prior equitable lien against the legal title. This would seem to be a sequence of the doctrine, that if the bill shows upon its face a prior equity in the plaintiff, which he seeks to enforce as *695 against a subsequent conveyance, tbe defendant must deny notice in his answer, if he sets up his legal title against the prior equity, whether notice in the bill is averred or not.
But the circumstance that the plaintiff does not aver in his hill that the defendant had notice of his prior equity, or pretend to rely on it as a ground of relief, hut rests his case on an entirely different ground, if it is not an admission that the defendant had no notice, it is strongly corroborative of the denial in the answer, and of the conclusion that he had, when he surrendered the possession, resolved to abandon the land and his contract, and look to McGuire personally for compensation. If so, there is nothing of which to predicate either actual or constructive notice, both of which are denied by the answer.
In relation to the matters alleged by Cross in his answer to the original bill, which he makes a part of his cross-bill, in which are set out the contract and transactions between him and McGuire, Marshall in his answer declares that he knows nothing in the world, whether correct or not, and denies that he had any notice, actual or constructive, of any prior equity of Cross to the land or its proceeds.
If he looked to the records, as he was at liberty to do, he found a perfect legal title vested in Dr. McGuire, and by him regularly conveyed to Ward the trustee, and no evidence there of a prior equity in anybody, where it ought to be found, if it existed. The land was sold on the premises, Mr. Marshall not present, and was purchased for him. He was informed that James Cross (the father of the appellee) was in possession. He would naturally inquire, does he claim any title to the property, or right of possession? What would or could have been the trustee’s answer *696 to the inquiry, but that he made no claim of right of property or possession? He made no objection to the sale. What did Mr. Marshall then do? Hid he confirm the sale? He said to the trustee, you must give me possession before I will confirm the sale. When you give me peaceable possession, I will confirm the sale and pay the purchase money. He was not willing to recognize it as a sale to him until that was done. What further inquiry need he have made, when that was done? Ho claim of right of property or possession, when the land was offered for sale—no objection made to the sale—and then possession delivered after the sale, without claim to any portion of the proceeds of sale. There was nothing to suggest to his mind, or to excite a suspicion of a prior equity in Cross. The doctrine, that possession is notice to the world of any claim which he in possession has upon the land, has no application here; because, when Marshall really became the purchaser, the land was not held in possession by-the appellee; and the circumstances under which the sale was made, and the previous possession of the appellee acquired by the trustee, were calculated to lull Marshall into a sense of security, and to repel the idea of a prior equity.
In the light.of reason and authority, I do not think the facts in this case show either constructive or actual notice on the part of James Marshall. Courts of equity act upon the conscience. And as it is impossible to attach any demand upon the conscience of a man, who has purchased for a valuable consideration bona fide, and without notice of any claim on the estate, we have high authority for saying he is entitled to the peculiar favor and protection of the courts. (Sugd. Vend. chap. 28, § 1, p. 497-8.)
*697 I am therefore of opinion to reverse the decree with ■costs, and to dismiss the plaintiff’s cross-bill.
Christian J. dissented.
The decree was as follows:
This day came again the parties by counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the decree aforesaid is erroneous. It is therefore decreed and ordered that the same be reversed and annulled, and that the appellee, J. L. Cross, do pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here.
And the court proceeding to pronounce such decree as the said Circuit court ought to have rendered, it is further decreed and ordered, that the cross-biff of the plaintiff J. L. Cross be dismissed, and that the defendants therein recover against the plaintiff their costs by them about their defence in this behalf expended ; which is ordered to be certified to the said Circuit court of Frederick county.
Decree reversed.